This is an appeal from a judgment quieting title in complainants to certain real property located in Shelby County. We affirm. *Page 524 
Complainants initially filed suit against respondents pursuant to § 6-6-540, Code 1975, to quiet title in personam to 35.75 acres of wild, unoccupied land in Shelby County. The complaint as finally amended described 49.52 acres.
Respondents' motion to dismiss was denied by the trial court. They then answered by disclaiming any interest in a portion of the 49.52 acres lying east of the mountain.
Respondents answered further by claiming to own the remaining land in fee simple except for three easements crossing the property; by outlining their chain of title to the property; and by claiming to have been in actual or constructive adverse possession for more than twenty years. Respondents admitted the ambiguous nature of the descriptions of their property and offered evidence to show the extent of possession by themselves and their predecessors in title in order to mitigate the ambiguity in the descriptions.
The case was tried to the court without a jury. Having heard the evidence ore tenus, the court quieted title in complainants; and made findings of fact:
 1) that the complainants at the time of filing the bill of complaint were the owners in fee simple of, and were in the peaceable actual or constructive possession of, the land described in the complaint;
 2) that at the time of filing complainants' bill of complaint, no action was pending to enforce or test the validity of complainants' title, claim or encumbrance;
 3) that all of complainants' allegations of fact were true;
 4) that respondents' claims at the time of the filing of the complaint constituted a cloud on complainants' title; and
 5) that respondents' claims both as to record title and adverse possession were without merit.
Respondents were permanently enjoined from asserting any right, title or interest in or to the described property. When the trial court failed to rule on their motion for JNOV or new trial within 90 days, respondents appealed from the findings of fact and denial of their motion pursuant to ARCP 59.1.
Two issues are presented for decision:
 1) Does the evidence support the trial court's finding that complainants were in peaceable actual or constructive possession at the time they filed the complaint?
 2) Did the plaintiffs prove that no action was pending to enforce or test the validity of respondents' claim, title or encumbrance on the property?
The established standard of review in a case heard ore tenus
is that the trial court's findings of fact will not be disturbed unless plainly erroneous. Adams v. Bethany Church,380 So.2d 788 (Ala. 1980); Williams v. Romano, 289 Ala. 190,266 So.2d 750 (1972); Ford v. Washington, 288 Ala. 194,259 So.2d 226 (1972). To maintain an action to quiet title to real property, however, complainant must prove certain facts. If these elements are not proved, the complaint is due to be dismissed unless the evidence shows that title should be quieted in the respondent. Chestang v. Tensaw Land TimberCo., Inc., 273 Ala. 8, 134 So.2d 159 (1960). Complainant must prove, inter alia, that he was in the actual or constructive possession of the property, and that his possession was peaceable as distinguished from scrambling or disputed. Hindsv. Slack, 293 Ala. 5, 299 So.2d 717 (1974). It is the character of the possession at the time the suit commenced which is decisive. Davidson v. Blackwood, 250 Ala. 263, 34 So.2d 205
(1948). Furthermore, there must be no suit pending at the time the suit commenced testing respondents' claims. Chestang;Wisener v. Trapp, 216 Ala. 595, 114 So. 196 (1927).
One has constructive possession of property when he has a legal estate in fee in the property. Hinds; George E. WoodLumber Co. v. Williams, 157 Ala. 73, 47 So. 202 (1908). And one is in peaceable possession as opposed to scrambling possession *Page 525 
when at the time of the suit no other party is denying the fact
of complainant's possession. If both parties claim actual possession or are scrambling for it, then the possession is not peaceable. Adams v. Bethany Church, 380 So.2d 788 (Ala. 1980) (quoting Hinds v. Slack); Davidson v. Blackwood. But isolated acts by the respondent which do not constitute interference with complainant's peaceable possession are insufficient to defeat his claim to the property. Cobb v. Brown, 361 So.2d 1069
(Ala. 1978); Ford v. Washington. Whether there is peaceable possession, however, must be decided on the facts of the particular case. Williams v. Romano.
In the instant case, complainants did not claim to be in actual possession; rather, they claimed to be in constructive possession by virtue of a deed given to Mabel Gibson's husband which she allegedly inherited from him. Respondents, on the other hand, claim to be in constructive possession by virtue of quitclaim deeds Zollie Cowart, Jr., purchased from a Rudolph Walker and his family.
Respondents assert that complainants were not in peaceable possession at the time the suit was filed as required by the statute. Rather, they claim that at best complainants' possession was scrambling or disputed.
The trial court heard testimony from Mrs. Mabel Shirley Gibson, and from Mr. Joe Lacey. Mrs. Gibson, age 82, testified that she had obtained the property through inheritance from her husband, John C. Gibson, who died in 1937. He, in turn, had received the deed to the property as a gift from his father, Daniel F. Gibson, about 1923. She said she had paid the tax assessments on the property since 1923. Although the testimony was confusing, Mrs. Gibson apparently had the property surveyed in 1970-71. She testified that no one had ever lived on the property nor had it been changed in any way. She said that an "unlivable" house had been built in the area, but she did not know if it was on the land she claimed or the tract of land next to it. For a few months in 1918-19, she and her husband did some surface mining on the land, but since that time, she had done nothing more than walk across it a few times. She was last on the property in the mid-1970's.
Mr. Lacey testified that he had resided in the area since before 1918. It was with Mr. Lacey's assistance that the surveyor was able to identify the corners of the property and complete the 1970-71 survey. Mr. Lacey also referred to the incomplete cement block house Mrs. Gibson had mentioned; he said it was located on land known in the area as the "Wesley Walker property" which, according to Lacey, lies north of complainants' land. (It is the Walker property from which respondents derive their title.)
The defense also presented only two witnesses, Mr. H.B. Gibson and Mr. Zollie Cowart, Jr., one of the respondents. (This Mr. Gibson is not related to the complainants.)
Mr. Gibson, age 78, testified that he had lived in the area since he bought some land there in 1956. He said that Mabel Gibson was reputed to own the property to the west of his land and that Rudolph Walker (Wesley Walker's nephew) was reputed to own the land north of his. Mr. Gibson also testified that a partially built concrete house was on the Walker property. According to Mr. Gibson, Rudolph Walker ordered the builder off his land before he was able to complete it. Mr. Gibson said that Rudolph Walker had shown him the corners of the Walker property and that he later learned that the respondent Mr. Cowart had purchased this land from Rudolph Walker. He learned in 1957 or 1958 that the Gibsons were also claiming this same land.
Respondent Zollie Cowart, Jr., age 62, testified next that he bought 40 acres of land known as the J.M. Sanders and T.J. Sanders property in 1952 from a Mr. Farris. Mr. Farris told Cowart that a Mr. Brantley had started to build a house on that property but that he was ordered off the land by Rudolph Walker before he finished it. Mr. Farris gave Cowart a quitclaim deed for that land. *Page 526 
Subsequently, Cowart learned that the Gibsons were claiming part of the land; Mr. Cowart began inquiring among those who had lived in the area over the years regarding the general reputation of the property's ownership. It was at this time that Mr. Cowart was shown the corners of the Wesley Walker property. In 1957, Mr. Cowart located Rudolph Walker and went on the property with him. Mr. Walker pointed out the boundaries of the land to Mr. Cowart which he claimed to own. He told Mr. Cowart about the unfinished block house lying on his property. Mr. Cowart subsequently bought this property from Walker and his two sisters. He received a quitclaim deed to the land.
Mr. Cowart testified that although there were some old fields located on this property that had obviously been planted with corn at one time, there was no evidence of any stripmining on the land he claims to own. Two or three years after he purchased the land from Walker, Mr. Cowart sold timber off the land. He said further that about two years ago, he stopped some men who were cutting on the Walker property. Mrs. Gibson had sold the property to them in 1975. Mr. Cowart also testified that he had sold two pipeline easements across the property and that Alabama Power Company had condemned a portion for a powerline. Mr. Cowart was the named defendant in that condemnation proceeding. Furthermore, after purchasing the property, he had had it surveyed. It was surveyed again by a Mr. Howard in 1971; Mr. Cowart showed Howard the lines of the property he claimed to own. Howard was hired by Mrs. Gibson.
In addition to the oral testimony before the Court, there was documentary evidence consisting of abstracts, maps, deeds, and aerial photographs. The abstract shows a common source of title for complainants and respondents. However, the descriptions contained therein are vague and ambiguous. Apparently both parties relied on the general reputation of the property as recalled by longtime residents of the area in reaching their conclusions about the boundaries of their land.
As stated above, the abstracts show a common source of title for both parties. Respondents' title, however branched from the Sanders family by deed dated October 30, 1884. The subsequent deed was from T.J. Sanders to Wesley Walker who conveyed to Rudolph Walker in 1937. Mr. Cowart's quitclaim deeds came from Walker in 1958. He then conveyed a portion of the property to the other two named respondents. Although the property descriptions throughout are vague, the evidence showed acts of possession by Wesley Walker, Rudolph Walker and Zollie Cowart, Jr.
Complainants' title branched from the Sanders family in 1875. Mrs. Gibson's father-in-law bought the land in 1911 from H.L. McConnell. McConnell's trustee, A.H. McCormick, had obtained the land from the Sanders family by a deed which excepted 70 acres, more or less, as occupied by J.M. Sanders and T.J. Sanders, Wesley Walker's grantors. The record title stops in Mrs. Gibson's father-in-law. Respondents contend that the contested property lies within the 70 acres excepted from the Gibsons' deed.
In light of all of the evidence we are not convinced that the trial court was plainly and palpably wrong in quieting title in the complainants.
Section 6-6-540 also requires the complainant to prove that no action is pending to enforce or test the validity of defendant's title, claim, or encumbrance to the land at the time complainants commenced the suit. Wisener v. Trapp,216 Ala. 595, 114 So. 196 (1927). Complainants admit in brief to a failure of proof regarding this issue; however, they contend that respondents waived the right to object to this issue by raising it for the first time on appeal. The complainants neither alleged it in their complaint nor offered proof of it at trial. Yet the trial court's finding of fact included the following:
 That at the time of filing of the Plaintiff's Complaint, no action [was] pending to enforce or test the validity of Plaintiffs' [Defendants'?] title, claim or encumbrance. *Page 527 
In Wisener v. Trapp, the complainant alleged in the bill of complaint that no suit was pending. The respondent denied the allegations generally, thereby placing the burden on the complainant to prove the allegation. Although the evidence showed peaceable possession in the complainant, the Supreme Court affirmed the trial court's refusal to grant relief to the complainant by holding that proof of no pending action "is essential to be established in cases of this character."Wisener v. Trapp.
A similar situation existed in the case of Bell v. Pritchard,273 Ala. 289, 139 So.2d 596 (1962); however, although the complainant averred in the complaint that no suit was pending, the respondent failed to deny it. The point was thus taken as proved although complainant did not offer proof of the matter at trial. Therefore, judgment in favor of complainant was proper.
In the instant case, neither the initial complaint nor the amended complaint averred that no suit was pending to test the validity of defendants' claim. Neither did the respondents admit or deny that a suit was pending. This situation is exactly on point with the case of Lawson v. Garrett, 286 Ala. 125, 237 So.2d 648 (1970).
This Court had this to say:
 Here, the averments of the bill, the answer, the cross bill and answer thereto, and all the evidence necessarily infer that no suit was pending and this was the first contest, claim or dispute that had arisen since the division of the forty acres in 1906. The cause was tried by all parties on this basis and was so treated by the court. In the absence of a specific objection, bringing the omission to the attention of the trial court, we will not, ex mero motu, reverse on a point raised in brief on appeal for the first time.
 The functions of this court in its appellate character are strictly confined to the action of trial courts upon questions which are presented to and ruled upon by them. We cannot put a trial judge in error for failure to rule on a matter which has never been presented to, nor decided by, him. [Emphasis added.]
This is precisely the situation in the instant case. There is nothing in the record to indicate that this issue was ever presented to the trial court for its consideration. The case was tried by the parties on this basis; hence the trial court could properly "infer" that no suit was pending. Therefore, on the facts of this case, complainants' failure of proof on this issue has no effect on the outcome of the case.
The judgment of the trial court is affirmed.
AFFIRMED.
ALMON, SHORES and EMBRY, JJ., concur.
TORBERT, C.J., concurs in the result.